[L.A. No. 32093. Nov. 13, 1986.]

EILEEN GREENUP, Plaintiff and Respondent, v.
DALE W. RODMAN et al., Defendants and Appellants.

## COUNSEL

Maureen Doyle, Horvitz & Levy, Ellis J. Horvitz and S. Thomas Todd for Defendants and Appellants.

Moore & Myers, John C. Moore and Loring M. Myers for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—As a sanction for wilful and deliberate refusal to obey discovery orders, the trial court in this case struck the answer and entered a default judgment in an amount exceeding the prayer of the complaint. We granted review to consider whether a default judgment entered as a discovery sanction is excepted from the general rule that "if there be no answer" filed, the plaintiff's relief "cannot exceed that which he shall have demanded in his complaint . . . ." (Code Civ. Proc., § 580.)[1] We conclude that in all default judgments the demand sets a ceiling on recovery.

---

[1]Section 580 provides: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the Court may grant him any relief consistent with the case made by the complaint and embraced within the issue."

All statutory references hereinafter are to the Code of Civil Procedure.

Plaintiff filed a complaint in August 1980 against Dale W. Rodman, individually and as majority shareholder of Rodair, Inc. and sole shareholder of Rodman Aviation, Inc., and against Rodman Aviation. She alleged that defendant Rodman had used involuntary dissolution procedures to transfer assets fraudulently from Rodair, Inc., in which she held a 20 percent minority interest, to Rodman Aviation, a corporation solely owned by Rodman. Charging fraud and conspiracy to defraud, concealment of assets, breach of fiduciary duty, conversion, and intentional infliction of emotional distress, plaintiff claimed damages "in a sum that exceeds the jurisdictional requirements of this court." In her prayer, however, the only specific sum requested was $100,000 in exemplary and punitive damages: all other damages were to be "subject to proof at time of trial" or "as the court deems just."

Following unsuccessful demurrers, defendants answered and plaintiff commenced discovery. Rodman was recalcitrant throughout this process, actively resisting both document production and deposition. After repeated failures to appear and numerous postponements, he appeared at a deposition on February 12, 1981, rescheduled at his request, only to refuse to answer questions because it was Lincoln's Birthday—assertedly a "legal holiday." At a June 1981 deposition, on a court order to appear with records at the office of plaintiff's counsel, Rodman produced an assortment of papers in a box filled with straw and horse excrement, which he laughingly dumped on the table. After counsel and the court reporter had inspected the documents for an hour, Rodman announced they must be sure to wash their hands thoroughly because the straw had been treated with a toxic chemical readily absorbed through the skin. The reporter, five months pregnant, asked to be excused, and the session was terminated by plaintiff's counsel.

On November 6, 1981, plaintiff moved to strike the answer and enter a default judgment. The court ordered defendants to pay $1,000 in sanctions (adding $500 to an earlier sanction that Rodman had failed to pay) and to appear at the office of plaintiff's counsel with the requested documents on December 23, 1981. When Rodman again refused to comply, plaintiff renewed her motion, demanding that a default be entered.

On August 24, 1982, the court granted plaintiff's motion to strike the answer and enter a default. However, it was not until September 24, 1982— i.e., a month *after* the default had been entered—that she filed a request to enter a default judgment (Cal. Rules of Court, rule 982(a)(6)), stating for the first time the amount of damages she claimed. After several continuances at plaintiff's request, an ex parte "prove-up" hearing was held. (Code Civ. Proc., § 585, subd. (b).) Plaintiff put on evidence in support of her claim of damages; defendants were not present either in person or by counsel.

The court found defendants liable for $338,000 in compensatory damages and $338,000 in punitive damages, and entered judgment in the amount of $676,000. Defendants appealed, contending inter alia that the court lacked jurisdiction to award damages in an amount exceeding the prayer. Holding this default for discovery violations exempt from the limit on damages in default judgments set by the code, the Court of Appeal affirmed the judgment.

I

■ Section 580, and related sections 585, 586, 425.10 and 425.11, aim to ensure that a defendant who declines to contest an action does not thereby subject himself to open-ended liability. Reasoning that a default judgment that exceeds the demand would effectively deny a fair hearing to the defaulting party, the Courts of Appeal have consistently read the code to mean that a default judgment greater than the amount specifically demanded is void as beyond the court's jurisdiction. (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381 [202 Cal.Rptr. 204]; *Ludka* v. *Memory Magnetics International* (1972) 25 Cal.App.3d 316 [101 Cal.Rptr. 615]; *Gudarov* v. *Hadjieff* (1952) 38 Cal.2d 412 [240 P.2d 621].)

We affirmed that strict construction of section 580 in *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489 [165 Cal.Rptr. 825, 612 P.2d 915]. We held that the primary purpose of the section is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them. As we observed, "The notice requirement of section 580 was designed to insure fundamental fairness. Surely, this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability." (*Id.* at p. 494.) Since *Becker,* the Courts of Appeal have insisted that due process requires formal notice of potential liability; actual notice may not substitute for service of an amended complaint. (E.g., *Engebretson & Co.* v. *Harrison* (1981) 125 Cal.App.3d 436, 443 [178 Cal.Rptr. 77].)

■ Nevertheless, plaintiff here maintains that the court acted within its jurisdiction in granting her increased award. She first argues that the terms of her complaint amply notified defendants of the extent of damages she would claim. While conceding that she omitted to state an amount of damages in her demand for judgment as section 425.10, subdivision (b), requires, she points to the usual inconsequence of such error. It is true that a general demurrer will not lie for a defective prayer alone. (*Miller* v. *Superior Court* (1922) 59 Cal.App. 334, 338-339 [210 P. 832]; *Hoffman* v. *Pacific Coast Const. Co.* (1918) 37 Cal.App. 125, 130 [173 P. 776].) And in the ordinary

case in which the litigation proceeds to trial, such a deficiency would carry no adverse consequences: the plaintiff would be permitted liberal amendment to the prayer to conform to proof. Furthermore, section 580 specifically provides that the court is not bound by the demand of the complaint, but may award any relief consistent with the case made by the plaintiff. (Fn. 1, *ante.*)

It is precisely when there is no trial, however, that formal notice, and therefore the requirement of section 425.10, become critical. Notice is at the heart of the provision, as the Legislature underscored by adding section 425.11, which provides that in the single instance in which the amount of damages shall not be specified in the complaint—an action for personal injury—"the plaintiff shall give notice to the defendant of the amount of special and general damages sought" before obtaining a default judgment. (See, e.g., *Jones* v. *Interstate Recovery Service* (1984) 160 Cal.App.3d 925, 929-930 [206 Cal.Rptr. 924].) It would undermine this concern for due process to allow the judgment herein to stand despite plaintiff's failure to meet the requirements of sections 425.10 or 425.11.

Plaintiff's more substantive claim, and the central issue before us, is that the foregoing limits on default judgments do not, either as a matter of statutory language or policy, apply in the present context. She concedes that section 580 governs the judgment even when, pursuant to section 2034, subdivision (b)(2)(C), a court strikes an answer and enters a default judgment for refusal to make discovery. She would construe the language of section 580, however, to permit unlimited damage judgments when an answer is stricken as a discovery sanction. She asserts that the first clause of the section—i.e., "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint"—applies only to "ordinary" defaults, presumably defaults at the pleading stage. And she concludes that when, as here, a default is entered after the defendant has filed his answer, the judgment falls within the more liberal rule of the second clause of section 580, i.e., "but in any other case, the Court may grant [the plaintiff] any relief consistent with the case made by the complaint and embraced within the issue."

In effect, plaintiff maintains that defendants entered irreversibly into an adversarial contest by filing a sufficient answer; having crossed that threshold, they may no longer claim the protection of section 580. In this way, plaintiff attempts to exclude answers stricken for discovery violations from the long line of precedents viewing a failure to answer as including the case in which an answer is filed but is later stricken by the court. (*Brown* v. *Ridgeway* (1983) 149 Cal.App.3d 732, 736 [197 Cal.Rptr. 327]; *Arata* v.

*Tellurium G. & S. M. Co.* (1884) 65 Cal. 340, 342 [4 P. 195]; *Lattimer* v. *Ryan* (1862) 20 Cal. 628, 633.)

We are unpersuaded. The rationale stated in *Brown*, i.e., that striking the answer renders it a nullity (see *Brown* v. *Ridgeway, supra*, 149 Cal.App.3d at p. 736), applies equally when the answer is stricken pursuant to section 2034. It is true that sections 586, 585, and 580, which together govern default judgments, do not explicitly list answers stricken pursuant to section 2034 as proceedings in which default judgment is rendered "as if the defendant had failed to answer . . . ." (§ 586.) Yet unless and until the Legislature specifically provides a separate procedure for defaults after discovery sanctions, these sections remain the sole statutory procedures for default judgments. Indeed, in the present case the ex parte prove-up hearing was conducted pursuant to section 585, subdivision (b). We conclude that the damages awarded must be limited by the terms of the same section: when an answer is stricken as a sanction for the defendant's obstruction of discovery, it is as if no answer had been filed in the first instance.

Arguing that default judgments entered for discovery violations should be held to differ fundamentally from other defaults as a matter of policy, plaintiff cites to the minority of federal cases that have upheld judgments exceeding the demand of the complaint. (*Trans World Airlines, Inc.* v. *Hughes* (2d Cir. 1971) 449 F.2d 51, revd. on other grounds (1973) 409 U.S. 363 [34 L.Ed.2d 577, 93 S.Ct. 647]); see also *Sarlie* v. *E.L. Bruce Co.* (S.D.N.Y. 1967) 265 F.Supp. 371; contra, *Fong* v. *United States* (9th Cir. 1962) 300 F.2d 400, 404-406 [stating majority rule].) Plaintiff stresses that these holdings were reached despite statutory language more absolute than section 580: rule 54(c) of the Federal Rules of Civil Procedure (28 U.S.C.) requires that "A judgment by default shall not . . . exceed in amount that prayed for in the demand for judgment."

Certainly these holdings give bite to discovery sanctions in cases in which the defendant's own actions obstructed the plaintiff from fixing the amount of damages to which he was entitled. But while unlimited discretion to award such default judgments might further the policy behind discovery sanctions, our paramount concern remains due process. Plaintiff overlooks a crucial difference between state and federal procedures in default judgments: as the courts in *Trans World Airlines* and *Sarlie* emphasized, federal defendants who default are entitled to a minitrial on the sole issue of damages. (*Trans World Airlines, Inc.* v. *Hughes, supra*, 449 F.2d at p. 78; *Sarlie* v. *E.L. Bruce Co., supra*, 265 F.Supp. at pp. 377-378.) Unlike the ex parte hearing provided for by section 585 (see, e.g., *Uva* v. *Evans* (1978)

83 Cal.App.3d 356, 359 [147 Cal.Rptr. 795]), the hearing in federal court is a full-fledged adversarial contest.[2]

It is here that plaintiff's analogy to federal law—and her contention that merely by filing an answer defendants have irreversibly contested this action—breaks down: under section 585 there is no contest whatever once a defendant defaults. (*Jones* v. *Interstate Recovery Service, supra,* 160 Cal.App.3d at p. 928.) We conclude that due process requires notice to defendants, whether they default by inaction or by wilful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a defendant to exercise his right to choose—at any point before trial, even after discovery has begun—between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability. To this end, as the court noted in *Jones,* "The rules governing default judgment provide the safeguards which ensure that defendant's choice is a fair and informed one." (*Ibid.*)

Plaintiff contends that defendants deliberately thwarted her discovery efforts because they believed they owed an actual debt to her in excess of her demand. Yet this is no less true of many defendants who fail to answer in the first instance. As we emphasized in *Becker,* no matter how reasonable an assessment of damages may appear in the specific case, we cannot open the door to speculation on this subject without undermining due process—a protection to which every defendant is entitled, even one as obstreperous and as guilty of reprehensible conduct as this defendant.

## II

Because the default judgment in this case exceeded the ceiling on damages to which plaintiff is subject, we conclude that the award must be amended to conform to the limitations specified in section 580. Defendants argue that because plaintiff stated no amount of damages in her prayer, she is entitled to no compensatory damages whatever. In *Becker,* however, we specifically held that the allegations of a complaint may cure a defective prayer for damages. (*Becker* v. *S.P.V. Construction Co., supra,* 27 Cal.3d at p. 494, citing with approval *Thorson* v. *Western Development Corp.* (1967) 251 Cal.App.2d 206, 213 [59 Cal.Rptr. 299]; see also *National Diversified Services, Inc.* v. *Bernstein* (1985) 168 Cal.App.3d 410, 417

---

[2]We are equally unpersuaded by defendants' attempt to use federal majority interpretation of rule 54(c) to support their contention that our discovery statutes must be read as conforming to the federal statutes on which they were modeled. Because the language and procedure of our code differs so markedly from the federal rule, federal case law and policy are at best suggestive on this point.

[214 Cal.Rptr. 113]; *Fehlhaber* v. *Fehlhaber* (5th Cir. 1982) 681 F.2d 1015, 1025.)

 Each of plaintiff's causes of action, with the exception of her personal injury claim, concluded with the allegation that she suffered damage "in an amount that exceeds the jurisdictional requirements of this court." Plaintiff brought her action in the Los Angeles Superior Court, which is a court of limited jurisdiction subject to the requirement that the amount in controversy exceed $15,000. (Former § 86.) By her allegations, plaintiff thus gave sufficient notice to defendants that she claimed at least $15,000 in compensatory damages. While an award in excess of $15,000 would be improper, a judgment in that amount was within the jurisdiction of the court. (See *Engebretson & Co.* v. *Harrison, supra,* 125 Cal.App.3d at p. 444.) The compensatory award should therefore be reduced to the extent that it exceeds $15,000.

Even as so modified, the judgment will clearly support an award of punitive damages. We need not, therefore, reach defendants' contention that an award of punitive damages cannot stand if there is no compensatory damage award. For the reasons given, however, the award of punitive damages must be reduced to the amount of $100,000 pleaded in the complaint.

### III

We recognize that the damages thus authorized may not fully compensate plaintiff for her loss. Because this case appears to be the first reported decision to hold that a default judgment entered as a discovery sanction is governed by the general rule that such a judgment cannot exceed the relief demanded in the complaint, both plaintiff and the trial court may have been unaware that the deficiency in her prayer could have been corrected in the same way as in cases of default for failure to answer, i.e., by giving plaintiff the option of serving and filing an amended complaint.

In the interest of fairness plaintiff should now be given that option. Specifically, she should be allowed to choose to forego the reduced award prescribed herein and instead to file an amended complaint praying for a different amount of damages and/or other appropriate relief. If she so elects, she must serve her amended complaint on defendants, who will be entitled to file a new answer; all issues will then be at large, including liability. Of course, if defendants thereafter continue to disobey discovery orders and incur a second default judgment as a sanction, plaintiff will have the right, at a second ex parte hearing, to prove her actual damages up to the limits of her amended prayer.

The judgment of the Court of Appeal is reversed with directions to modify the judgment of the trial court in accord with Part II of this opinion and to affirm the judgment as modified, unless within 30 days after issuance of our remittitur plaintiff serves and files in the Court of Appeal a notice electing the option set forth in Part III of this opinion. In that event, the Court of Appeal shall reverse the judgment of the trial court with directions to allow plaintiff to exercise that option. In either event the parties shall bear their own costs on appeal.

Broussard, J., Reynoso, J., Grodin, J., Lucas, J., and Panelli, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I write separately to express a concern that has been overlooked by the majority. Civil defendants who wish to limit their liability to the minimum amount specifically pleaded can (1) force plaintiffs to undergo the frustration and expense of discovery, and then (2) absent themselves allowing a default to be entered. This is exactly what happened here.

As the majority note, Code of Civil Procedure section 425.10, subdivision (b)[1] requires that the specific amount demanded must be set forth in the complaint. (See maj. opn. at p. 826.) The only exemption involves cases in which damages are sought to recompense a personal injury. However, as Witkin observes: "[a]lthough the statute [§ 425.10, subd. (b)] purports to require a [specific] demand, the prayer is not a part of the cause of action and, under the authorities, is not even essential in a contested case. A defective prayer is not subject to demurrer but may be corrected by amendment . . . ." (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 447, p. 491.)

In addition, Witkin notes, "C.C.P. 580 provides that *if the defendant answers* the court may grant 'any relief consistent with the case made by the complaint and embraced within the issue,' and the rule is well settled that in a contested case the plaintiff may secure relief different from or greater than that demanded. [Citations.]" (4 Witkin, *supra,* § 449, p. 492, italics added; maj. opn. at p. 827.)[2]

---

[1]Code of Civil Procedure section 425.10 provides in pertinent part: "A complaint or cross-complaint shall contain . . . the following: [¶] (b) A demand for judgment for the relief to which the pleader claims he is entitled. If the recovery of money or damages be demanded, the amount thereof shall be stated . . . ."

Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

[2]Section 580 states: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue."

On initial examination, the current rule limiting a plaintiff's recovery to the specific amount demanded would appear to apply only in traditional default situations, i.e., cases in which the defendant has exercised his or her option *not* to respond to the allegations made in the complaint. (See § 580.) As the majority note, none of the sections governing default judgments (§§ 580, 585, 586) explicitly list answers stricken as a discovery sanction "as proceedings in which default judgment is rendered 'as if the defendant had failed to answer . . . .' (§ 586)." (See maj. opn. at p. 828.)

Although the majority acknowledge the fact that the statutory scheme does not address this situation, they insist that due process requires a "strict construction of section 580. . . ." (See maj. opn. at p. 826.) However, this interpretation would mandate the application of the damage ceiling to actions in which answers are stricken as a discovery sanction. In so doing, the majority expand the parameters of section 580 by incorporating all cases falling within the ambit of section 2034.[3]

The justification proffered for equating defaults entered at the pleading stage with those resulting from sanctions imposed under section 2034 is the concern that defaulting parties may be denied the *formal* notice of the maximum amount of potential liability required by due process. (See maj. opn. at pp. 826-827.)

The first clause of section 580 was set down by the Legislature to guarantee defendants adequate notice of the maximum judgment that may be assessed against them. (See maj. opn. at p. 826.) However, it is clear that the statutory language contemplates two different situations. The first clause of section 580 addresses the traditional default context where a defendant has failed to answer. In this situation, fundamental fairness requires that the defendant be notified. The second clause of section 580, by contrast, refers to contested cases.[4] Absent the discovery abuses that occurred here, the defendant would have an opportunity to determine and contest the maximum amount of damages pleaded. In contested cases, therefore, any affirmative action taken by a defendant demonstrates that notice has been received.

In the present proceeding, defendants not only filed an answer to the complaint, they gave both plaintiff and the court the impression that they would participate in the discovery process. For the two-year period between the date plaintiff filed the complaint—August of 1980—and the date the court granted plaintiff's motion to strike the answer and enter a default—

---

[3]Section 2034 empowers the courts to impose sanctions against litigants who wrongfully fail or refuse to participate in the discovery process.

[4]See footnote 2, *ante.*

August of 1982—this case *was* "contested." In fact, had plaintiff's motion to strike been unsuccessful, her complaint would have permitted her to recover all the damages she could prove despite a defective prayer.

The record demonstrates that during this two-year period defendants had no intention of providing plaintiff with any information through the discovery process. As the majority note, defendant Rodman "actively resist[ed] both document production and deposition." (See maj. opn. at p. 825.) He repeatedly failed to appear at scheduled meetings and, during the one deposition he chose to attend, engaged in behavior that can only be described as shocking, inhumane, and inexcusable.

In light of these circumstances, I cannot agree with the majority's conclusion that default judgments entered as a sanction for obstruction of discovery must be treated as if no answer had been filed in the first instance. The policy considerations underlying a decision to uphold judgments exceeding the demand where the defendant's affirmative actions invite a default judgment are considerably more compelling than the majority allow.

The principal purpose of the ceiling set forth in section 580 is to apprise defendants of their potential liability so that they may evaluate the consequences of exercising their right not to answer. Here, the defendant Rodman *has* answered and then obstructed the discovery process. In so doing, he prevented the plaintiff from ascertaining the proper amount of damages. If the ceiling on damages is applied to this situation, it would permit the defendants to profit from wrongdoing.

Consider the facts of this case. Defendants answered the complaint, thereby indicating their intention to contest plaintiff's allegations. The ensuing evasive maneuvers permitted defendants to gauge plaintiff's case while raising the stakes by forcing her to file expensive and futile discovery motions. When it became clear that plaintiff could not realistically estimate the losses she suffered as a result of the dissolution without defendants' cooperation, defendants attempted to limit their liability by suddenly withdrawing from the proceedings.

The majority admit that the rule they delineate will undercut the effectiveness of discovery sanctions in cases where, as here, only the defendants know the dollar value of the losses suffered. Nevertheless, they claim that due process mandates such a result. If their concern is proper notice to defendants, I see no reason why plaintiffs must suffer the frustration and expense of refiling their claims so that obstreperous defendants may choose the optimal point at which to drop out of the litigation. The majority's

holding eliminates any remedy for outrageous abuses of the discovery process.

To avoid this inequity, I would suggest an alternative procedure. The trial court, at the time it enters the default, would send a notice to the defendant stating that it will consider evidence in support of a claim of damages in an amount exceeding the prayer of the complaint at the scheduled "prove-up" hearing under section 585. During that proceeding, the defendant would be permitted to present rebuttal evidence.

This procedure[5] would provide defendants with ample notice of their potential liability and an opportunity to challenge the amount of damages sought. This solution is preferable to that suggested by the majority for it accommodates due process while ensuring the effectiveness of motions to strike answers as sanctions for clear abuses of the discovery process.

Appellants' petition for a rehearing was denied December 31, 1986.

---

[5]This procedure would be analogous to that employed in the federal courts in cases where a plaintiff seeks damages exceeding the demand in the complaint. (See, e.g., *Trans World Airlines, Inc.* v. *Hughes* (2d Cir. 1971) 449 F.2d 51, revd. on other grounds (1973) 409 U.S. 363 [34 L.Ed.2d 577, 93 S.Ct. 647].)