[No. B019782. Second Dist., Div. Seven. June 16, 1987.]

PHILLIP MORGAN, Plaintiff and Respondent, v.
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT,
Defendant and Appellant.

COUNSEL

Leach, Biesty & McGreevy, Clinton T. McCool, Horvitz, Levy & Amerian, S. Thomas Todd and Andrew N. Chang for Defendant and Appellant.

Jay S. Bloom for Plaintiff and Respondent.

OPINION

JOHNSON, J.—Defendant, Southern California Rapid Transit District (RTD), appeals from a default judgment entered after its answer to the complaint was stricken for violating discovery orders. We reverse and remand.

### FACTS AND PROCEEDINGS BELOW

Plaintiff, Phillip Morgan, was injured in an accident involving an RTD bus. He sued the RTD for negligence. The RTD denied liability. It contended the accident resulted from the bus driver's sudden, unforeseeable loss of consciousness and nothing in the driver's medical history or physical examinations suggested he would black out while driving a bus.

Morgan initiated discovery into the bus driver's health prior to the accident. The history of these discovery efforts and the RTD's failure to cooperate is detailed below.

| | |
|---|---|
| July 23, 1984: | Morgan served second set of interrogatories. |
| October 31, 1984: | Morgan moved to compel response to second set of interrogatories. |
| November 28, 1984: | Court ordered RTD to respond by December 28, 1984; $300 sanction. |
| January 15, 1985: | Morgan moved for order striking answer to complaint because response to interrogatories had not been served. |
| February 7, 1985: | RTD served response to interrogatories; motion off calendar. |
| May 30, 1985: | Morgan moved for response to certain interrogatories on ground February 7 response incomplete. |
| June 27, 1985: | Court ordered RTD to respond to interrogatory No. 4 (regarding Dr. Metcafe) by July 2, 1985; $314 sanction. |
| July 22, 1985: | Morgan moved to strike answer on ground no response to interrogatory No. 4 had been served and no sanctions paid. |
| August 30, 1985: | Court granted motion striking RTD's answer to the complaint. |

Eventually after twice ordering the RTD to answer the interrogatories and imposing monetary sanctions, the trial court struck the RTD's answer to the complaint. This led to a default judgment for Morgan.

On appeal, the RTD contends the June 27 discovery order was invalid and therefore all orders flowing from it are also invalid; the trial court abused its discretion in striking the answer to the complaint; and, the default judgment was in excess of the court's jurisdiction.

We have concluded the order striking the defendant's answer was a proper discovery sanction under the circumstances of this case. However, because plaintiff failed to serve notice of the amount of damages sought (Code Civ. Proc., § 425.11) prior to moving for this sanction, the amount of the default judgment, $90,000, exceeded the ceiling on damages to which plaintiff is subject and must be amended to conform to the limitations specified in Code of Civil Procedure section 580. (*Greenup* v. *Rodman* (1968) 42 Cal.3d 822, 829 [231 Cal.Rptr. 220, 726 P.2d 1295].)

DISCUSSION

## I. THE ORDER STRIKING DEFENDANT'S ANSWER TO THE COMPLAINT WAS NOT AN INVALID ATTEMPT TO ENFORCE A PREVIOUS INVALID ORDER

■ The RTD contends the order striking its answer to the complaint is invalid because it flows directly from an invalid order on June 27, 1985, compelling further answers to interrogatories. The June 27 order was invalid, the RTD claims, because the motion to compel further answers was not made within the 45-day time limit prescribed by Code of Civil Procedure section 2030, subdivision (a). The court has no jurisdiction to act on an untimely motion to compel answers. (See *Vidal Sassoon, Inc.* v. *Superior Court* (1983) 147 Cal.App.3d 681, 683 [195 Cal.Rptr. 295].)

We do not believe the court's June 27 order is properly characterized as an order compelling further answers under section 2030, subdivision (a). A preceding order, November 28, 1984, had directed the RTD to file answers to Morgan's interrogatories. That order implicitly directed the RTD to file complete answers. "[I]nterrogatories shall be answered ... fully ... under oath...." (Code Civ. Proc., § 2030, subd. (a).) The subject motion which resulted in the June 27 order was an effort by Morgan and the court to obtain RTD's compliance with the original order to answer interrogatories by utilizing section 2034, subdivision (b).

This is not a case where the responding party voluntarily filed answers to interrogatories but the propounding party, dissatisfied, seeks further information. (Cf. *Vidal Sassoon, Inc., supra,* 147 Cal.App.3d at p. 682.) Here, the RTD filed no answers to the interrogatories until the trial court ordered it to do so and levied a $300 sanction. Thus, there is more at stake here than

Morgan's interest in obtaining the proper objects of discovery. (*Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 303 [10 Cal.Rptr. 377].) There is also the interest of the court in compelling "obedience to its judgments, orders and process." (Code Civ. Proc., § 128, subd. (a)(4); see *Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].)

Having already ordered the RTD to answer interrogatories under section 2034, subdivision (a), the court was authorized to "make any orders in regard to the refusal which are just." (Code Civ. Proc., § 2034, subd. (b)(2).) The court responded to the RTD's refusal to comply fully with its first order by ordering the RTD "to answer interrogatory No. 4 completely within 5 days without objection" and imposing an additional monetary sanction. Section 2034 imposes no time limit within which a court must act to enforce its own discovery order. We will not borrow the 45-day time limit within which a party must move for further answers. A court should not be so restricted in enforcing its orders. Furthermore, it is reasonable to presume that where the Legislature does not provide a time limit in a procedural matter such as this, it intended no time restrictions on the procedure. (*Crippen* v. *Superior Court* (1984) 159 Cal.App.3d 254, 260 [205 Cal.Rptr. 477].)

II.  THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN STRIKING THE RTD'S ANSWER TO THE COMPLAINT

The trial court has broad discretion in imposing discovery sanctions. (*Alliance Bank* v. *Murray* (1984) 161 Cal.App.3d 1, 9 [207 Cal.Rptr. 233].) "[T]he term judicial discretion implies absence of arbitrary determination, capricious disposition, or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. To exercise the power of judicial discretion, all material facts must be known and considered, together also with the legal principles essential to an informed, intelligent and just decision." (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 796 [149 Cal.Rptr. 499].)

In reviewing this particular case, we bear in mind dismissing the defendant's answer is the most drastic sanction available to the court—the procedural equivalent of capital punishment—and that it contradicts the strong public policy favoring disposition of cases on their merits. (See *Flood* v. *Simpson* (1975) 45 Cal.App.3d 644, 652 [119 Cal.Rptr. 675].) Nevertheless, it is a sanction the Legislature has authorized for use where just. (Code Civ. Proc., § 2034, subd. (b)(2).)

In *Deyo,* the court named a variety of factors which may be relevant to the discretionary imposition of discovery sanctions. These include the

amount of time the party has had to answer; the difficulty in obtaining answers; the materiality of the unanswered questions; whether the party has acted in good faith and with reasonable diligence; whether the party was unable to comply with the previous order of the court; and, whether a sanction short of default would be an appropriate remedy. (84 Cal.App.3d at p. 797.)

■ The interrogatory that brought about the sanction asked for the address of a doctor who had examined the bus driver during the course of his employment. The question was asked in a set of interrogatories served on the RTD in July 1984. No answers to these interrogatories were filed within the statutory time or within several extensions granted by Morgan. Eventually, Morgan moved to compel answers. The motion was granted on November 28, 1984. The RTD was ordered to answer within 30 days, and a $300 sanction was imposed. Again, the RTD failed to respond within the 30-day period or the extension of time Morgan granted. On January 15, 1985, Morgan moved for sanctions against the RTD. The RTD served its answers on February 7, 1985, and Morgan's motion was taken off calendar. The RTD's answers identified "Dr. Metcafe" as the physician who had performed physical examinations on the bus driver in 1976, 1978 and 1980. No first name or address was given for "Dr. Metcafe." Morgan deemed this response as not complying with the court's November 1984 order and moved for another order to provide answers and for sanctions. On June 27, 1985, the court ordered the RTD to answer the interrogatory "completely within 5 days without objection" and assessed an additional $314 in sanctions. Having received no response to the interrogatory by July 22, twenty days past the due date, Morgan moved for an order striking the RTD's answer to the complaint. After one year, three motions and two orders, the RTD still had failed to answer the interrogatory by stating "Dr. Metcafe's" first name and address or stating such information was not in its possession.

The good faith and diligence referred to in *Deyo* requires the responding party to provide information in its possession or in the possession of its agents. It does not require the responding party to research information which is equally available to the propounding party. (*Pantzalas* v. *Superior Court* (1969) 272 Cal.App.2d 499, 503 [77 Cal.Rptr. 354].) Here, "Dr. Metcafe's" first name and the address last known to the RTD were in the RTD's possession and should have been provided. (*Deyo, supra,* 84 Cal.App.3d at p. 782.)

The RTD also had the duty to provide the correct spelling of the doctor's name. The interrogatory answer spells the name "Metcafe" but subsequent documents filed by the RTD spell the name "Metcalf." The RTD admits it

misspelled the name of another doctor in the answers to the interrogatories, thereby casting further doubt on the correct spelling of "Metcafe."

The trial court could reasonably conclude from the RTD's failure to provide information in its possession, and the inaccuracy of the information it supplied, the RTD did not exercise good faith and diligence in responding to Morgan's interrogatory.

The information Morgan sought was material to his case. The RTD claimed there was no apparent cause for the driver's blackout, and nothing in his medical history suggested he might lose consciousness while driving a bus. This would provide the RTD a defense against liability to Morgan. (See *Tannyhill* v. *Pacific Motor Transport Co.* (1964) 227 Cal.App.2d 512, 520 [38 Cal.Rptr. 774].) Obviously, from Morgan's standpoint, contacting a doctor who had given the driver physical examinations before the accident could lead to admissible evidence to counter the RTD's defense.

The trial court considered whether a sanction short of default would be appropriate. It concluded: "There is no meaningful sanction other than striking the answer." The court noted it had already issued two orders to answer the interrogatory. It had also imposed monetary sanctions. The RTD had neither answered the interrogatory nor paid the sanctions. The court found an order limiting evidence relating to the interrogatory would not be an effective sanction because the interrogatory only sought to discover a potential witness who might rebut the RTD's claims about the driver's medical condition.

The RTD contends it was justified in failing to answer the interrogatory even after being twice ordered to do so. The RTD states it informally supplied Morgan's counsel all the information it had about Dr. Metcafe; failure to comply with the court's orders was a mere technicality. Alternatively, the RTD argues it did finally answer the subject interrogatory on August 1, 1985, advising Morgan it did not possess Dr. Metcafe's current address and setting out the efforts it made to locate the doctor. The RTD concedes the answer to the interrogatory was mailed to the wrong address, and that the case was set for trial in September 1985. Nevertheless, the RTD claims its cunctatious and misdirected answer at least shows it did not willfully refuse to answer the interrogatory.

The trial court was not persuaded by these arguments and neither are we. A party may disagree with a court order. He may believe it wrong-headed or a waste of time or picayunish—but he disregards it at his peril. " 'There is no question of the power of the [trial] court to apply the ultimate sanction of default against a litigant who persists in an outright refusal to comply

with his discovery obligations.'" (*Flood* v. *Simpson, supra,* 45 Cal.App.3d at p. 652.) Because the RTD ended up providing no better information in August 1985 than it could have provided in August 1984—i.e., it could not determine the whereabouts of Dr. Metcafe from its records—the trial court was justified in concluding the RTD's failure to answer the interrogatory was willful. A willful failure does not necessarily include a wrongful intent. A failure may be deemed willful if the party understood its obligation, had the ability to comply and failed to comply. (*Deyo, supra,* 84 Cal.App.3d at p. 787.) All of these factors are present in the case before us.

In summary, we find no abuse of discretion in striking the RTD's answer to the complaint. The RTD had a year in which to simply state under oath, "The bus driver was examined by Dr. Walter Metcafe (or Metcalf) whose last known address is _____.") The fact the RTD persistently failed to provide information in its file in response to the interrogatory demonstrates a lack of good faith and a willful refusal to comply with the court's orders to answer the interrogatory. The information Morgan sought was material to his case because the driver's medical history and physical condition were put in issue by the RTD. There were no less drastic sanctions available to the court. Orders to answer and monetary sanctions had been tried twice without success. An order limiting evidence would not be effective because Morgan sought Dr. Metcafe as a potential witness to rebut the RTD's defense. Thus, precluding the RTD from calling Dr. Metcafe as a witness would not be a pertinent response to the RTD's violation of the discovery orders. Unless the court was willing to allow a party to decide for itself whether an order was worthy of being obeyed, it had no alternative to the sanction it imposed.

III.  A PLAINTIFF IN AN ACTION FOR DAMAGES FOR PERSONAL INJURY OR WRONGFUL DEATH MUST SERVE THE DEFENDANT WITH A NOTICE OF THE AMOUNT OF SPECIAL AND GENERAL DAMAGES SOUGHT TO BE RECOVERED BEFORE A DEFAULT MAY BE TAKEN AS A DISCOVERY SANCTION

■ The RTD contends the default and default judgment are void because Morgan gave no notice of the damages sought as required by Code of Civil Procedure section 425.11. That section provides, in relevant part: "If no request is made for ... a statement setting forth the nature and amount of damages being sought the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered ... before a default may be taken...."

As we explained in *Twine* v. *Compton Supermarket* (1986) 179 Cal.App.3d 514, 517 [224 Cal.Rptr. 562], section 425.11 exists because

section 425.10 prohibits the plaintiff in a personal injury action from stating the amount of damages. Section 425.11 affords the defendant "one last clear chance" to respond to the allegations of the complaint and avoid a judgment for an unstated, but potentially substantial, sum. In *Twine,* we set aside the default and reversed the default judgment because plaintiff did not properly serve defendant with a statement of damages pursuant to section 425.11.

The question in the case before us is whether the language of section 425.11 quoted above applies where the defendant's answer is stricken and default entered as a discovery sanction. This question must be answered affirmatively in light of our Supreme Court's decision in *Greenup* v. *Rodman, supra,* 42 Cal.3d 822.

The issue in *Greenup* was whether a default judgment entered as a discovery sanction is exempted from the general rule that "if there be no answer" filed, the plaintiff's relief "cannot exceed that which he shall have demanded in his complaint. . . ." (Code Civ. Proc., § 580.) (*Greenup* v. *Rodman, supra,* 42 Cal.3d at p. 824.) The court concluded due process requires "that in *all* default judgments the demand sets a ceiling on recovery." (*Ibid.*; italics added.) The court did not specifically address the unique situation of plaintiffs claiming damages for personal injury or wrongful death who, by law, are prohibited from including the amount of their demand in their complaint. (Code Civ. Proc., § 425.10, subd. (b).)[1] Nevertheless, the court's reasoning compels the conclusion a plaintiff seeking default as a discovery sanction must comply with section 425.11.

The court's decision in *Greenup* was based on due process considerations: "We conclude that due process requires notice to defendants, whether they default by inaction or by wilful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a defendant to exercise his right to choose—at any point before trial, even after discovery has begun—between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (42 Cal.3d at p. 829.) These due process considerations are no less applicable because the claim is for personal injury or wrongful death. Indeed, the court cites section 425.11 as an example of the Legislature's concern for due process notice before a default judgment "in the single

---

[1] Greenup's complaint included a cause of action for intentional infliction of emotional distress along with claims for fraud, conversion and breach of fiduciary duty. (42 Cal.3d at p. 825.) In explaining the reasons for its decision, the court makes no distinction between these causes of action. (But see discussion, *infra,* pp. 986-987.)

instance in which the amount of damages shall not be specified in the complaint." (*Id.*, at p. 827.)

Thus, we conclude where the amount of damages is excluded from the complaint under section 425.10, it must be communicated by plaintiff through notice under section 425.11 before the defendant's answer may be stricken and a default entered as a discovery sanction.

Morgan contends that in the case before us, the RTD was on notice of the damages claimed through Morgan's responses to discovery and settlement negotiations. The possibility the defendant could divine the amount of damages claimed through collateral sources does not satisfy due process. This issue was addressed in *Greenup*. Referring to its decision in *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489 [165 Cal.Rptr. 825, 612 P.2d 915], the court, in *Greenup*, stated: "[T]he primary purpose of [§ 580] is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them. As we observed, 'The notice requirement of section 580 was designed to insure fundamental fairness. Surely, this would be undermined if the door were opened to speculation, no matter how reasonable it might appear in a particular case, that a prayer for damages according to proof provided adequate notice of a defaulting defendant's potential liability.' Since *Becker*, the Courts of Appeal have insisted that due process requires formal notice of potential liability; actual notice may not substitute for service of an amended complaint." (42 Cal.3d at p. 826; citations omitted.)

Morgan strenuously urges his sworn answers to interrogatories provided the RTD with notice of his damage claim superior to the notice the RTD would have received from an unsworn statement of damages pursuant to section 425.11. He requests we augment the record on appeal to include his interrogatory answers and that we consider those answers in determining whether the RTD received notice of his claim sufficient to satisfy its right to due process.

We reject Morgan's argument and his request to augment the record for several reasons. In the first place, section 425.11 unambiguously requires a notice of damages "before a default may be taken." It is clear from the language of section 425.11 the notice referred to is a discrete document, not an answer contained in a set of interrogatories. Second, use of any document other than a statement of damages prepared in compliance with section 425.11 would be contrary to our Supreme Court's decision in *Greenup* and *Becker, supra*. Third, using the interrogatories and answers to determine the amount of the damages claim would involve this court, or the trial court, in the interpretation of the interrogatories and answers which would

result in unnecessary use of the courts' time and could embroil the courts in controversy with the parties over the proper interpretation of those interrogatories and answers.

## IV. REMEDY FOR THE TRIAL COURT'S ERROR

We turn now to the appropriate remedy for the trial court's error.

In *Greenup,* the court held the usual remedy would be to reduce the default judgment to the amount demanded in the complaint or, if no amount is demanded, to the minimum jurisdiction of the superior court. (42 Cal.3d at pp. 829-830.) However, because the minimum jurisdictional amount might not fully compensate the plaintiff, and because the case was one of first impression, the court determined fairness required the plaintiff be given the choice between accepting the minimum jurisdictional amount or allowing the defendant to file a new answer putting the case again at issue. (*Ibid.*)

We believe Morgan should be afforded the same choice. The fact Morgan was awarded $90,000 by the default judgment indicates the minimum jurisdictional amount ($15,000 at the time of the default) may not adequately compensate him for his loss. Furthermore, *Greenup* was not decided until eight months after Morgan obtained his default judgment. Therefore, we will adopt the remedy prescribed in *Greenup* modified to recognize Morgan cannot amend his complaint to state the amount of damages demanded.[2]

Our disposition is by no means intended to allow the RTD to escape sanctions for its willful refusal to obey the trial court's discovery order. Although it turns out the trial court acted in excess of jurisdiction in striking the RTD's answer it clearly had the authority to impose a monetary sanction under the facts of this case. Therefore, if Morgan elects to allow the RTD to file a new answer the trial court should impose a substantial monetary sanction. We believe $15,000 would not be out of line in this case.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter a new judgment in the amount of $15,000 plus costs unless, within 30 days after issuance of our remittitur, plaintiff serves and files in the trial court a notice electing to allow the defendant to file a new answer in which case the trial court shall (1) vacate the default and allow the defendant to answer within

---

[2] In a supplemental brief, the RTD essentially proposes this same remedy.

30 days thereafter; (2) impose a monetary sanction for defendant's violation of the court's discovery order.

Each party to bear its own costs on appeal.

Lillie, P. J., and Thompson, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 26, 1987.