[No. B038981. Second Dist., Div. Four. May 31, 1989.]

In re the Marriage of ELIZABETH R. and KURT F. NIKLAS.
ELIZABETH R. NIKLAS, Appellant, v.
KURT F. NIKLAS, Respondent;
STUART B. WALZER, Objector and Appellant.

**COUNSEL**

Hillel Chodos, Gina M. Putkoski and Walzer & Gabrielson for Appellants.

Paul Gutman and Honey Kessler Amado for Respondent.

**OPINION**

**GEORGE, J.**—Elizabeth R. Niklas, the petitioner in a marital dissolution proceeding (hereinafter referred to as wife), and her attorney, Stuart B. Walzer, appeal from an order finding they failed to comply with court-ordered discovery and imposing monetary sanctions. They contend (1) a March 30, 1988, discovery order violated the attorney work-product doctrine and attorney-client privilege, and (2) the $45,000 sanctions imposed were excessive. For the reasons discussed below, we conclude the trial court's order imposing discovery sanctions is not appealable but elect to treat the present appeal as an application for extraordinary relief. We hold the failure of Walzer and his client to challenge the March 30, 1988, discovery order in a timely fashion precludes their doing so in these proceedings but grant relief regarding the *amount* of sanctions imposed, as to which they did seek timely review.

### FACTUAL AND PROCEDURAL HISTORY

On April 23, 1987, wife filed a petition for dissolution of her marriage to Kurt F. Niklas (hereinafter referred to as husband), the respondent in the present purported appeal. Concurrently, wife filed an application for attorneys' fees, spousal support, and a temporary restraining order. The application was supported by her declaration and that of her attorney, Stuart Walzer. Walzer's four-page declaration stated it was based on his personal knowledge and contained a brief summary of the financial posture of the parties.

By written stipulation filed July 13, 1987, husband agreed to pay wife spousal support of $3,000 per month and $10,000 toward her attorneys' fees.

On December 4, 1987, wife filed a second application for attorneys' fees which was supported by further declarations of her own and of Walzer, and by several exhibits. Walzer's eight-page declaration, executed November 30, 1987, was based on his personal knowledge and stated he had conducted discovery and had "reviewed the deposition transcripts and answers to interrogatories, [and] analyzed, among other records, bank statements, financial documents and the dissolution of marriage documents of both parties' prior marriages." Walzer's declaration contained detailed assertions concerning husband's acquisition and ownership of two restaurants (The Bistro and The Bistro Garden), husband's income and assets, the assets of the community, and the efforts expended by Walzer and his client in furtherance of the litigation. An order to show cause regarding attorneys' fees and costs was set for January 8, 1988.

On December 18, 1987, husband noticed the depositions of wife and Walzer for December 29 and 30 respectively. Apparently wife appeared for her deposition and testified. When Walzer appeared for his deposition, he was questioned, inter alia, concerning the source of the information contained in his November 30 declaration.[1] Walzer refused to answer the majority of the questions posed to him, asserting the attorney work-product doctrine and, in some instances, the attorney-client privilege.

By stipulation executed March 7, 1988, husband agreed to advance $20,000 from community funds toward wife's attorneys' fees.

On March 14, 1988, husband noticed a motion to compel Walzer to answer the questions asked at the deposition and to impose sanctions. A hearing was held on March 30, 1988, at which the court determined Walzer had waived the work-product doctrine and the attorney-client privilege by submitting his declaration. The court ordered Walzer to answer the disputed questions at a second deposition. Husband's request for sanctions was denied with prejudice, but his request for attorneys' fees was denied without prejudice. Walzer indicated he wished to seek appellate review, and his deposition was ordered to commence within 30 days. Husband served wife with notice of the ruling that same day.

Wife did not seek appellate review and, instead, Walzer appeared for his deposition on April 28, 1988. Walzer answered every question but frequent-

---

[1] For reasons not apparent from the record before us, the deposition took place on January 9, 1988. The record does not reflect whether the order to show cause, set for January 8, 1988, was heard.

ly responded that he did not know or could not recall and said he had neither reviewed his files nor brought certain documents, because the court had not ordered him to do so. At the end of the session, Walzer indicated his intention to seek a protective order prior to resumption of the deposition on May 5, 1988. The deposition resumed on that date, apparently without such an order having been sought. Again, Walzer answered each question but stated neither he nor anyone on his staff had reviewed his files to determine whether he possessed certain documents. After several hours, Walzer adjourned the deposition, stating he intended to apply for a protective order from the court.

On April 14, 1988, husband filed a motion for leave to depose wife. On May 4, 1988, the court granted the motion over wife's objection. Wife appeared for her deposition on May 17, 1988, but stated, on the advice of her attorney, that she had not brought any of the documents listed in the notice of deposition. Walzer said he had so advised his client because the requested documents were irrelevant and could not lead to the discovery of relevant evidence. Throughout the deposition, Walzer repeatedly instructed wife to refuse to answer questions on these grounds.

On May 24, 1988, husband filed a motion for discovery sanctions. Wife opposed the motion on the grounds that the requested information could not lead to the discovery of admissible evidence and that the depositions were oppressive and burdensome. Following a hearing June 8, 1988, the court found Walzer had no legal excuse for adjourning his deposition and that wife, in refusing to produce documents and answer questions at her deposition pursuant to Walzer's advice, had not complied with the court's order. The court ordered both Walzer and his client to resume their depositions beginning June 21, 1988. The court continued the issue of appropriate sanctions to August 2, 1988. Walzer stated his intention to seek appellate review.

On June 17, 1988, the court granted wife's request to continue her deposition and that of Walzer from June 21 to July 21, 1988, in order to permit them to seek appellate review. Wife thereafter attempted to obtain a further continuance. After this failed, Walzer and his client did not appear for their depositions. On July 28, 1988, Walzer and his client sought a writ from this court, and the following day we summarily denied their petition because of their unreasonable delay in seeking appellate review of the March 30, 1988, order.

On August 2, 1988, the lower court imposed "issue sanctions" which prohibited wife from disputing a lengthy list of designated facts. On August 19, 1988, Walzer and his client filed a second writ petition in'this court. On

September 20, 1988, we gave notice we were considering issuing a peremptory writ directing the court below "to modify its August 2, 1988 sanctions order to impose only severe monetary sanctions on condition that petitioners first answer deposition questions without assertion of the privileges that [the court below] determined to be waived."

In response to this court's order, on October 6, 1988, the court below held a hearing and again ordered both Walzer and his client to complete their depositions. The court took the issue of sanctions under submission and later ordered Walzer and his client, jointly and severally, to pay sanctions to husband in the amount of $45,000.

On December 14, 1988, Walzer and his client filed a notice of appeal from the order imposing monetary sanctions. On December 30, 1988, they filed a protective petition for extraordinary relief in the event the order imposing monetary sanctions was deemed nonappealable. On January 11, 1989, we denied the protective petition without prejudice to refiling in the event the related appeal was dismissed as taken from a nonappealable order. On January 26, 1989, we dismissed as moot the writ petition filed August 19, 1988, which had challenged the August 2, 1988, order imposing "issue sanctions."

DISCUSSION

I

*The Order Imposing Sanctions Is Nonappealable*

Whether the order imposing sanctions may be appealed prior to judgment depends, in part, on whether it was based on section 128.5 or sections 2023 and 2025 of the Code of Civil Procedure.[2] Although the order of the court below does not recite its statutory basis, the parties agree the monetary sanctions were imposed pursuant to sections 2023 and 2025 for misuse of the discovery process rather than pursuant to section 128.5 for frivolous or bad faith tactics. We accept this interpretation. The court below originally imposed "issue sanctions" as authorized by section 2023. In response to this court's notice of intention to issue a peremptory writ, the court below

---

[2] All further statutory references are to the Code of Civil Procedure.

Section 128.5, subdivision (a), provides in pertinent part: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorneys' fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."

Sections 2023 and 2025 provide specific sanctions for "[m]isuses of the discovery process." (§ 2023, subd. (a).)

imposed monetary sanctions instead. There is no reason to believe these monetary sanctions were not likewise imposed pursuant to section 2023 or the related provisions of section 2025.

■ The recent decision of this court in *Slemaker* v. *Woolley* (1989) 207 Cal.App.3d 1377 [255 Cal.Rptr. 532] held an order imposing sanctions pursuant to section 2025 is nonappealable, whether sanctions are imposed against a party or an attorney currently representing a party. (*Id.,* at pp. 1380, 1382.) The court in *Slemaker,* for policy reasons, declined to treat the matter as a writ. In the present case, we do grant review by treating the appeal as an application for extraordinary relief (*Poe* v. *Diamond* (1987) 191 Cal.App.3d 1394, 1398 [237 Cal.Rptr. 80]), in part because the monetary sanctions at issue were imposed in response to an earlier order from this court.

II

*Where Review of a Discovery Order Was Not Sought in a Timely Fashion, the Aggrieved Party May Not Challenge Sanctions Imposed for Failure to Comply With That Order on the Ground the Discovery Order Was Erroneous, Provided the Court Acted Within Its Jurisdiction in Making the Original Order*

■ Walzer and his client contend, and husband concedes, that the validity of the order imposing sanctions depends upon the validity of the March 30, 1988, discovery order, which determined Walzer had waived the protections of the work-product doctrine and the attorney-client privilege.[3] This proposition is true, however, only if the court below was without jurisdiction to issue this order and the subsequent discovery orders violated by Walzer and his client.

In the present case, Walzer announced his intention to seek review of the March 30 ruling, was given an opportunity to do so, but failed to seek review in a timely manner. Instead, Walzer and his client each repeatedly failed to comply with the orders of the court below until, several months later, sanctions were imposed. Because Walzer and his client failed to seek

---

[3] Husband contends that the failure to seek review of the March 30, 1988, discovery order resulted in a substantial increase in the attorneys' fees and costs which he incurred, but nonetheless concedes that Walzer and his client are free to question the correctness of that order in attacking the subsequent imposition of sanctions. It remains the function of this court, however, to make the determination whether, under the circumstances of the present case, the allegedly erroneous nature of the discovery order could provide a defense to the imposition of sanctions for violation of that order. (*Money* v. *Krall* (1982) 128 Cal.App.3d 378, 393 [180 Cal.Rptr. 376].)

direct review of the discovery order in a timely manner and instead violated the order, the trial court's order imposing sanctions must be upheld even if the discovery order was erroneous, unless the order was beyond the jurisdiction of the court below.

■ A person may refuse to comply with a court order and raise as a defense to the imposition of sanctions that the order was beyond the jurisdiction of the court and therefore invalid, but may not assert as a defense that the order merely was erroneous. As the Supreme Court held regarding a challenge to the validity of an injunction: "In this state a person affected by an injunctive order has available to him two alternative methods by which he may challenge the validity of such order *on the ground that it was issued without or in excess of jurisdiction*. He may consider it a more prudent course to comply with the order while seeking a judicial declaration as to its jurisdictional validity. [Citation.] On the other hand, he may conclude that the exigencies of the situation or the magnitude of the rights involved render immediate action worth the cost of peril. In the latter event, such a person, under California law, may disobey the order *and raise his jurisdictional contentions* when he is sought to be punished for such disobedience." (*In re Berry* (1968) 68 Cal.2d 137, 148-149 [65 Cal.Rptr. 273, 436 P.2d 273], italics added.)

In *Berry,* the petitioner violated an injunction against union picketing which restricted the exercise of his First Amendment right to freedom of speech. The court found the petitioner could not be charged with criminal contempt because "the violation of an order *in excess of the jurisdiction* of the issuing court cannot produce a valid judgment of contempt. . . ." (*Id.,* at p. 147, italics added.) In so holding, the court distinguished its earlier decision in *Signal Oil etc. Co.* v. *Ashland Oil etc. Co.* (1958) 49 Cal.2d 764 [322 P.2d 1].

The appellants in *Signal Oil* had violated a temporary restraining order by failing to comply with a certain "Agents' Agreement." On appeal, this agreement was found to be void, and the Supreme Court reversed a preliminary injunction issued to enforce it. Nevertheless, although it reversed the temporary restraining order, the court concluded the order was not void and appellants were not justified in violating it: "the validity of the Agents' Agreement, was a question of law which the trial court had the power to determine in the first instance, and its determination, even though erroneous, had to be respected until reversed. . . . [¶] . . . Under the circumstances, these orders, although subsequently determined to be erroneous, were not void." (49 Cal.2d at p. 776.) The temporary restraining order, although erroneous, was not beyond the court's jurisdiction because " '. . . "Jurisdiction, being the power to hear and determine, implies power to

decide a question wrong as well as right" [citation].' " (*Id.,* at p. 778; see also *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 909, fn. 7 [141 Cal.Rptr. 133, 569 P.2d 727].)

In the present case, Walzer and his client contend the trial court's order was erroneous but make no showing the order was unconstitutional or otherwise in excess of the court's jurisdiction. (Compare *In re Misener* (1985) 38 Cal.3d 543, 558 [213 Cal.Rptr. 569, 698 P.2d 637]; *In re Marcario* (1970) 2 Cal.3d 329, 330 [85 Cal.Rptr. 135, 466 P.2d 679] [both cases involving orders held to violate the privilege against self-incrimination]; and *Wilson* v. *Superior Court* (1987) 194 Cal.App.3d 1259, 1268 [240 Cal.Rptr. 131] [order held to violate the separation of powers].) The court below was within its jurisdiction in ruling that the protections of the work-product doctrine and the attorney-client privilege had been waived and ordering Walzer and his client to comply with discovery, Walzer and his client having failed to avail themselves of the opportunity to obtain appellate review. (See *Raytheon Co.* v. *Superior Court* (1989) 208 Cal.App.3d 683, 686 [256 Cal.Rptr. 425].)[4] Even if the trial court had erred in issuing the discovery orders, sanctions could be imposed for the willful violation of the court's orders.

### III

*The Record Does Not Support the Amount of Sanctions Awarded*

■ Walzer and his client contend the sanctions awarded are excessive because they are not limited to the actual amounts expended by husband as a result of the failure of Walzer and his client to comply with the court's orders. Husband does not demonstrate to the contrary that he did incur $45,000 in attorneys' fees and costs as a result of the actions of Walzer and his client, but instead points to the circumstance that this court suggested

---

[4] We express no opinion as to whether a different rule would apply had a timely petition seeking writ review of the order been summarily denied or if, for other reasons, there were no effective means of obtaining timely review of the lower court's order.

In their reply brief and at oral argument, Walzer and his client contend that the right to challenge an interim order cannot be waived by failing timely to seek writ review, because review of an interim order always may be obtained upon appeal from the final judgment. This is true, in part, but misses the point. Although the issue whether the March 30, 1988, order was correct could be raised by wife (but not Walzer) on appeal from a final judgment, this does not mean Walzer and his client were justified in refusing to comply with the court's order or that the court could not impose sanctions to enforce its order. Walzer and his client are correct that wife has not waived her right to obtain review of the court's March 30, 1988, order upon appeal from a final judgment, but the failure to comply with a court order which is within the jurisdiction of the court, where appellate review is available but not sought in a timely manner, justifies the imposition of sanctions whether or not subsequently the order is determined on appeal to have been erroneous.

the imposition of "severe" monetary sanctions and contends the trial court did not abuse its discretion.

Section 2025, subdivision (o), provides that the failure to obey a court order compelling production of documents or answers to questions at a deposition may be considered a contempt of court and, in addition, "the court may make those orders that are just against the disobedient party," including imposition of sanctions pursuant to section 2023. Among the sanctions authorized by section 2023 are monetary sanctions for "the reasonable expenses, including attorneys' fees, incurred by anyone as a result of [the improper] conduct."

In *Lund* v. *Superior Court* (1964) 61 Cal.2d 698 [39 Cal.Rptr. 891, 394 P.2d 707], the Supreme Court distinguished monetary sanctions payable to an opposing party from punishment (as a contempt) for disobedience of a court order: "Historically, a contempt is punishable by imprisonment or fine, for it is an act in defiance of the dignity of the court. It is not of the same nature as those acts and omissions which are merely in derogation of the rights of the opponent, and which may be met with orders calculated to indemnify the aggrieved party. We have been cited to no authority which indicates that the punishment for a contempt may include the payment of money to private individuals." (*Id.,* at pp. 714-715.) The high court noted, in contrast, that monetary discovery sanctions payable to the opposing party are limited to the opposing party's actual costs, including attorneys' fees. (*Ibid.*; *Smith* v. *Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 279 [150 Cal.Rptr. 828].)

In the present case, the record before us does not establish that at least $45,000 of the attorneys' fees and other costs incurred by husband were caused by Walzer's and his client's disregard of the court's discovery orders. In support of the imposition of monetary sanctions, husband submitted a summary of attorneys' fees and costs which reflected a total of nearly $51,000. Attached to this summary were seven pages of itemized entries dated from January 14 to August 15, 1988. The services for which these fees and costs were incurred, however, are described in cursory fashion; many entries bear only general descriptions such as "research," "review," or "letter."

We are unable to determine from this record what portion of the sanctions imposed was based on fees and costs incurred as a result of the disregard of discovery orders by Walzer and his client. For example, the figures submitted by husband include amounts incurred prior to and including the March 30, 1988, hearing at which Walzer was ordered to answer deposition questions. At this hearing, husband's request for sanctions was

denied with prejudice. Therefore, only fees and costs incurred after March 30, 1988, could serve as a basis for the award of the sanctions here at issue. Also, the cursory descriptions of the services for which fees and costs were incurred provide an inadequate basis for a determination whether these fees and costs are related to the failure of Walzer and his client to comply with the court's orders. The order of the court below does not assist us because it does not explain how the court arrived at the figure of $45,000.[5]

Although we remain of the opinion that this blatant disobedience of court orders warrants severe sanctions, the imposition of such sanctions must comport with the statutory authority on which they are based. Sanctions payable to husband must be limited to reasonable costs, including attorneys' fees, incurred by husband as a result of (1) Walzer's failure to complete his deposition which began on April 28, 1988, and resumed on May 5, 1988, (2) wife's failure to produce documents at her May 17, 1988, deposition, (3) husband's efforts to compel Walzer and his client to respond, and (4) husband's efforts to obtain and defend sanctions. The lower court is also free to reconsider its earlier denial without prejudice of attorneys' fees at the March 30, 1988, hearing. Of course, the lower court retains additional means to enforce its orders (see *Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721]), but application of such powers may not result in payments to husband in excess of his reasonable costs. (*Hillman* v. *Stults* (1968) 263 Cal.App.2d 848, 884 [70 Cal.Rptr. 295].)

We do not hold that the sum of $45,000 is excessive, but only that (1) the evidence must be sufficient to support a finding that the amount of sanctions (whether in this figure or some other) reflects the amount spent or incurred by husband in an attempt to obtain compliance with discovery, and (2) the record must reflect a determination by the trial court that such amount spent or incurred was reasonable. On remand, the court below shall determine the amount of sanctions necessary to reimburse husband for his reasonable attorneys' fees and other costs and may consider other sanctions, including contempt, necessary to protect the dignity of the court and ensure compliance with the court's orders. (See *Morgan* v. *Southern Cal. Rapid Transit Dist.* (1987) 192 Cal.App.3d 976, 980-981 [237 Cal.Rptr. 756].)

---

[5] On February 1, 1989, subsequent to the filing of the notice of appeal, the court below issued a minute order clarifying its October 17, 1988, order imposing sanctions. The lower court also issued a nunc pro tunc order on February 21, 1989, expanding its statement of reasons for the imposition of the sanctions here at issue. Walzer and his client object to our consideration of these documents. In light of our holding, and as requested by Walzer and his client, we decline to consider those findings made by the court below subsequent to the filing of the notice of appeal.

## DISPOSITION

The appeal is dismissed. Let a peremptory writ issue directing the court below, in accordance with the views expressed in this opinion, to reconsider the amount of sanctions imposed. Each party shall bear his or her own costs on appeal.

McClosky, Acting P. J., and Goertzen, J., concurred.