[No. B007189. Second Dist., Div. Four. Oct. 7, 1987.]

CASTAIC CLAY MANUFACTURING COMPANY, Plaintiff and Respondent, v.
GUS DEDES, Defendant and Appellant.

**COUNSEL**

John A. Slawson and Tony L. Cogliondro for Defendant and Appellant.

Lascher & Lascher and Wendy C. Lascher and Oskar Stark for Plaintiff and Respondent.

**OPINION**

McCLOSKY, J.—After a court trial, judgment was awarded plaintiff in the sum of $729,641.23 on a theory of slander of title. Defendant appeals from the judgment.

We originally filed an opinion in this case on May 8, 1985. After the filing of the opinion it was revealed to us for the first time that Gus Dedes had filed a bankruptcy proceeding (case No. 84-02584-M7, In re Gus Dedes, Debtor) which automatically stayed this matter. Thereafter, the United States District Court gave its approval for this appeal to proceed and

authorized the trustee for the bankruptcy estate to pursue this appeal and to employ John Slawson, Esquire, as attorney for the estate. We therefore issued our opinion on April 27, 1987. On July 23, 1987, the Supreme Court transferred this cause to us "for reconsideration in light of *Greenup* v. *Rodman* (1986) 42 Cal.3d 822."

## FACTS

Mike Mallow, Gus Dedes and Calvin Peterson were the sole shareholders of Castaic Clay Manufacturing Company (Castaic). In 1977, Mallow purchased Dedes's 50 percent share and Peterson's 25 percent share of the company to become the sole shareholder. Castaic is engaged in the business of manufacturing bricks on a 54-acre site where the plant and the clay supply are located.

In July 1979, the corporation applied to First Interstate Bank for a $2.8 million loan for the purposes of modernizing its brick manufacturing operation and constructing a tunnel, kiln, and driers. It was anticipated the modernization would result in lower labor costs, reduced breakage, and a substantial energy saving. The bank withdrew its commitment to make the loan when a preliminary title search unearthed certain deeds which adversely affected the marketability of the title. In the chain of title was a deed dated December 19, 1975, purporting to convey title to the 54 acres to one Juan Perez. The grant deed, which was recorded March 21, 1978, bore the notarized signature of Mike Mallow. Also of record was a grant from Perez to Calvin and Cristina Peterson, dated June 16, 1978, and recorded October 10, 1978. Thereafter, the Petersons instituted an unlawful detainer action against Castaic which was ultimately resolved in favor of Castaic. On May 9, 1980, the Petersons executed a quitclaim deed to Castaic. In February 1981, the title issue having been resolved, a loan was made to Castaic and construction commenced on the modernization. It was completed in February 1982, and went into full operation in May 1982.

The court trial proceeded on the third cause of action labeled slander of title, against Gus Dedes, all other causes of action and defendants having been dismissed. The third cause of action of the complaint, in substance, alleged the fraudulent recordings and requested damages as follows: "25. Each of the aforementioned recordings directly impaired the vendibility of the property on the open market in the sum of $50,000." In paragraph 26, plaintiff sought punitive damages in the sum of $1 million. The prayer of the complaint was for (a) general damages of $50,000; (b) punitive damages of $1 million; (c) damages caused plaintiff "by inconvenience and time suffered by plaintiff in removing the cloud on its title"; and (d) for other and further relief as the court deems proper.

The judgment rendered against defendant after trial in which evidence on the subject of these damages was received, was $500,000 for compensatory damages, $29,641.23 as special damages suffered in defending the unlawful detainer action, and $200,000 in punitive damages. The court found against the defendant on his cross-complaint for indemnification. The complaint was never amended and no request was made to conform the complaint to proof.

## ISSUES ON APPEAL

It is our understanding the defendant urges the following points as reversible error: (1) The court was without jurisdiction to award compensatory damages in excess of $50,000 because the prayer was for $50,000; (2) the damages awarded were speculative and, therefore, excessive; (3) the "type" of damages awarded on the cause of action for slander of title was improper; (4) the punitive damages awarded were excessive; and (5) certain evidence the defendant offered was improperly refused.

## DISCUSSION

### I

On July 23, 1987, the Supreme Court transferred this matter to us for reconsideration in light of *Greenup* v. *Rodman* (1986) 42 Cal.3d 822 [231 Cal.Rptr. 220, 726 P.2d 1295].

In *Greenup,* our high court considered whether a default judgment entered as a discovery sanction is excepted from the general rule that " 'if there be no answer' filed, the plaintiff's relief 'cannot exceed that which he shall have demanded in his complaint . . . .' (Code Civ. Proc., § 580.) [Fn. omitted.]" The Supreme Court concluded "that in all default judgments the demand sets a ceiling on recovery." (*Id.,* at p. 824.)

The case at bench is, of course, distinguishable from *Greenup* in that it does not involve a default judgment as did *Greenup,* but rather involves a judgment entered after a completed trial in which both parties to the appeal fully participated and in which evidence on damages was taken.

### II

Appellant argues that the court exceeded its jurisdiction in awarding compensatory damages in excess of the amount stated in the prayer for the third *cause of action*. Moreover, he urges that the punitive damages awarded were in error because the compensatory damage award was

erroneous. The respondent argues that it is doubtful that a rule prohibiting an award in excess of a prayer exists in California. Nonetheless, urges respondent, the award is proper under a prayer for general relief.

■■■ It is the general rule that, in a contested cause, in the absence of an amendment to the complaint to conform to proof, a court may not award the plaintiff a sum in excess of the amount of damages he claims to have sustained. (*Meisner* v. *McIntosh* (1928) 205 Cal. 11 [269 P. 612]; *Hooper* v. *Wells Fargo & Co.* (1864) 27 Cal. 11; *Burke* v. *Koch* (1888) 75 Cal. 356 [17 P. 228]; *Kerry* v. *Pacific Marine Co.* (1898) 121 Cal. 564 [54 P. 89].) ■■ It is not the prayer of a pleading which is controlling; it is the averment contained in the pleading which determines the maximum sum which may be awarded the claimant. (See *Miller* v. *Superior Court* (1922) 59 Cal.App. 334, 338 [210 P. 832]; *Hoffman* v. *Pacific Coast Const. Co.* (1918) 37 Cal.App. 125, 127 [173 P. 776].) This is a long-standing principle.

The reasons for the general rule were stated at page 604, 15 Ruling Case Law: "In order to give a judgment the merit and finality of an adjudication between the parties, it must be responsive not only to the proofs but to the issues tendered by the pleadings, because pleadings are the very foundation of judgments and decrees. A judgment will be void which is a departure from the pleadings, and based upon a case not averred therein, since if allowed to stand it would be altogether arbitrary and unjust and conclude a point upon which the parties had not been heard."

Since 1872, Code of Civil Procedure section 580 has provided that "[t]he relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; *but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue.*" (Italics added.)

In *McAllister* v. *Union Indemnity Co.* (1935) 2 Cal.2d 457 [42 P.2d 305], our Supreme Court held that the court may grant a plaintiff any relief consistent with the case " 'made by the complaint and embraced within the issue.' " It held that the word " 'issue' " is broader than the complaint, and went on to state that "[i]t is also true that the parties may voluntarily submit and try an issue without any specific pleadings and thus be estopped from complaining thereat after judgment. [Citations.]" (*Id.,* at p. 460.)

■■■ While the amount of general damages relief awarded by the trial court exceeded the amount of general damages set forth in the body of the complaint, the trial court admitted evidence of general compensatory damages of at least the $500,000 general damages sum awarded and of at least the $29,641.23 sum awarded as compensatory special damages and of

punitive damages. The parties thus actually tried the issues of damages in amounts above the limits set forth in the body of the complaint. The amount of the trial court's judgment on those issues therefore could not have come as any surprise to defendant and was the source of no prejudice to him since no additional time or effort by him was required to meet those issues. (See *Rosenthal* v. *Harris Motor Co.* (1953) 118 Cal.App.2d 403, 408 [257 P.2d 1034]; *Thompson* v. *Hickman* (1948) 89 Cal.App.2d 356, 358 [200 P.2d 893], and *Hayes* v. *Richfield Oil Corp.* (1952) 38 Cal.2d 375, 382 [240 P.2d 580], wherein the court said: "If anything, Richfield's continued insistence that the issue was not presented by the pleadings indicates that it was fully aware that the court's rulings would permit recovery under that theory.")

■ It is lamentable that plaintiff counsel did not move to amend the pleadings to conform to proof but judicial economy would be ill served by requiring this case to be retried because of that technicality. We therefore conclude that the award of compensatory damages shall be affirmed.

### III

■ Defendant contends that there was no basis for an award of punitive damages and in any case, the award was excessive. ■ It is his view, also, that the failure of the plaintiff to offer more than cursory evidence of defendant's wealth precludes an award of punitive damages. These contentions are meritless.

■ Exemplary damages are assessed for the purposes of punishing a defendant for his reprehensible conduct and for the purpose of making an example of him. (*Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].) ■ It follows that punitive damages imposed must bear a reasonable relationship to the actual damages suffered. There is, however, no rigid ratio mandated in the law between actual and punitive damages awarded. (*Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 644 [178 Cal.Rptr. 167].) ■ In assessing the propriety of any punitive damages award, the evidence must be viewed in the light most favorable to the judgment. ■ The defendant in this case was found to have engaged in arrant conduct in causing to be recorded certain fraudulent deeds against plaintiff's title. The record reflects that the judge rendered judgment for damages proximately caused by defendant's acts only after a period of time had passed and after reflection upon the subject. Moreover, the punitive damages awarded amounted to less than 38 percent of the actual compensatory damages. We perceive absolutely no evidence whatsoever of the influence of passion or prejudice upon the amount awarded and, therefore that the award was not excessive.

■    Defendant incorrectly asserts that evidence of a defendant's wealth is a condition precedent to an award of exemplary damages. If evidence of a defendant's financial condition is presented, a trier of fact is entitled to consider such evidence in arriving at an award of punitive damages. Such evidence is not, however, an essential prerequisite to such an award. (*Hanley* v. *Lund* (1963) 218 Cal.App.2d 633, 645 [32 Cal.Rptr. 733]; *MacDonald* v. *Joslyn* (1969) 275 Cal.App.2d 282, 293 [79 Cal.Rptr. 707, 35 A.L.R.3d 641].) There is, in fact, merit in and authority for the position that it is the defendant's burden to present evidence of his financial status if he seeks to establish that an award of punitive damages in excess of a given sum will wreak too great a penalty. (See *Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952, 964 [192 Cal.Rptr. 219].)

The judgment is affirmed. The parties shall each bear their own costs on appeal.

Woods, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied October 27, 1987, and appellant's petition for review by the Supreme Court was denied December 22, 1987. Arguelles, J., did not participate therein.