Filed 4/23/25  Gilman v. Hawthorne CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ROBERT GILMAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HEIDI HAWTHORNE,<br><br>Defendant and Appellant. | A167783<br><br>(Solano County<br>Super. Ct. No. FCS056345) |

Heidi Hawthorne appeals from a judgment entered after a bench trial finding that she committed fraud and conversion, in connection with the joint purchase of a house with Robert Gilman, and distributing the net proceeds from the sale of the property between the parties.  Hawthorne does not contest the accounting following the partition by sale.  We agree with Hawthorne that judgment on the fraud and conversion claims should be reversed.

**BACKGROUND**

**I.  *Complaint***

On April 14, 2021, Gilman filed a complaint against Hawthorne for partition by sale, conversion, and fraud.[1]  The complaint alleged the

---

[1] The complaint also named Mortgage Electronic Registration Systems, Inc.  The trial court dismissed this entity with prejudice because no

1

following: Gilman and Hawthorne each owned 50 percent of a residential home in Vallejo, which they purchased together in late 2014. The purchase price was $650,000, and the parties agreed that each would pay 50 percent. Hawthorne applied for a loan of $225,000 and intended to pay the remaining balance of $100,000 in cash. However, just before closing, Hawthorne was unable to obtain the loan without a cosigner due to her credit history. Further, she did not have the ability to contribute the $100,000 in cash. Gilman agreed to be a coborrower with Hawthorne on the $225,000 loan and to pay her balance of $100,000 in cash, in addition to his $325,000 cash contribution, to complete the purchase of the home. Hawthorne represented that when her credit rating improved she would refinance the loan into her own name. She also agreed to repay Gilman the additional $100,000 he contributed to the purchase price. The property was refinanced in August 2016 and again in June 2018; however, Gilman received no money from either refinance.

The first cause of action alleged partition by sale. The second cause of action, for conversion, alleged that Hawthorne received approximately $90,000 from the two refinance loans and converted these proceeds to her own use without repaying Gilman the additional $100,000 he contributed to the purchase of the property. The third cause of action, for fraud, alleged that Hawthorne defrauded Gilman when she told him she would contribute 50 percent of the purchase price of the property and then, when escrow was about to close, informed him that she did not qualify for a loan without a cosigner and that she could not pay any cash toward the purchase price. Gilman withdrew the additional $100,000 cash from his savings account and

---

evidence was presented relating to it and no evidence was presented that it was served with the summons and complaint.

cosigned for the $225,000 loan to complete the purchase of the property. The third cause of action further alleged that Gilman agreed to the 2016 and 2018 refinances because he believed that Hawthorne would perform on her obligation to repay him the additional $100,000 cash which he contributed to the purchase price.

## II. *Trial and Judgment*

The following evidence was produced at the bench trial. In 2014, Gilman and Hawthorne were platonic friends from church. They agreed to purchase a house together in Vallejo for $650,000. Gilman was going through a divorce at the time, and Hawthorne's home, which was in foreclosure, ultimately sold in a short sale. They initially agreed to split the purchase price equally, with Gilman contributing $325,000 in cash and Hawthorne contributing $100,000 in cash and obtaining a loan for her remaining $225,000. However, a week before escrow closed, Hawthorne told Gilman that she could not come up with the $100,000 cash payment and that she could not qualify for the loan without Gilman as a cosigner. Gilman agreed to contribute the additional $100,000 with the understanding that Hawthorne would pay him back shortly after closing. Hawthorne's version of the parties' verbal agreement was that she would pay back $25,000 and work off the remaining $75,000 in labor on the house, or " 'sweat equity.' " She testified that she made three payments to Gilman in late 2014 and early 2015 in the amounts of $5,100, $9,950, and $9,950; however, she did not have documentation of any of the payments. Gilman cosigned on the $225,000 loan Hawthorne obtained. Escrow closed on January 26, 2015. At that time, Gilman asked Hawthorne to repay the $100,000 loan.[2] Hawthorne made the

---

[2] Gilman's testimony does not explain how Hawthorne responded to his request at the time of closing.

3

mortgage payments on the loan Gilman cosigned, and she never asked him to contribute to the mortgage payments.

In August 2016, Hawthorne refinanced the $225,000 mortgage for a larger loan of $284,900 that was in her name only. Gilman agreed to the refinance. Hawthorne received $63,855.96 from the 2016 refinance. Gilman expected that Hawthorne would use the cash to pay him back a portion of the $100,000 she owed him. However, he did not specifically condition his agreement to the refinance on Hawthorne's paying him back. Gilman neither asked her to pay him from the loan proceeds nor received any of the $63,855.96 from the first refinance in August 2016.

In June 2018, Hawthorne again refinanced the property with a new loan of $305,000. Gilman agreed to the second refinance. Hawthorne received $18,803.89 from the 2018 refinance. Again, neither did she pay any of it to Gilman nor did Gilman ask to be paid any of the loan proceeds.

In January 2021, Hawthorne attempted to refinance the property a third time for a loan of $530,000. This time, Gilman did not agree to the refinance. He testified that he refused to agree to the third refinance because "from the second and the third loan where money was taken out, I was then aware that I wasn't going to get any back of my money." (*Sic.*)

The parties agreed to sell the property in August 2021 for $975,000. After payment of the mortgage, the net proceeds of the sale were $651,691.

Following the trial, the parties submitted proposed statements of decision. On January 6, 2023, the trial court issued a tentative proposed statement of decision in favor of Gilman on all claims. Hawthorne filed an objection to the proposed statement of decision and requested a hearing. The trial court did not hold a hearing on Hawthorne's objection. On March 6, 2023, the trial court issued its final statement of decision, which was largely

4

the same as the tentative proposed statement of decision. It found that Hawthorne perpetrated fraud on Gilman by misrepresenting that she would repay the additional $100,000 he contributed to purchase the property. It found Gilman's testimony credible that Hawthorne agreed to contribute $100,000 in cash to purchase the property and found Hawthorne's testimony that the parties agreed she would pay a portion of the $100,000 in cash and the remainder in " 'sweat equity' " to lack credibility, in part because there was no documentary evidence Hawthorne made any cash payments to Gilman. The trial court further found that Gilman " 'discovered' " Hawthorne had no intent to repay him after the second refinance in June 2018 and therefore his complaint was timely filed on April 14, 2021. It found that Hawthorne breached her fiduciary duty to Gilman by failing to repay the $100,000. It further found the conversion claim timely because "it was reasonable for [Gilman] to expect that [Hawthorne] would repay the money she borrowed from him out of the refinance funds, and that [Gilman] 'discovered' [Hawthorne's] deception after the second refinance in June 2018 when she did not repay the $100,000.00 she borrowed from him then."

The judgment entered was as follows: "1. Hawthorne committed fraud when she induced Gilman to believe she had sufficient funds available to close escrow on an equal co-owner basis, on which Gilman reasonably relied and in reliance, withdrew an additional $100,000.00 from his retirement funds to loan Hawthorne for her portion of the down payment. This use on behalf of Hawthorne of the additional $100,000.00 deprived Gilman of his own use of the funds for a period of several years, causing harm to him; [¶] 2. Hawthorne committed fraud when she promised to repay $100,000.00 to Gilman knowing that she was either unable to repay him or had no intention of doing so; [¶] 3. Hawthorne committed conversion when she

5

refinanced the original loan twice and removed cash equity belonging equally to the parties. The amount of equity she converted from the first withdrawal of $63,855.96 and the second withdrawal of $18,803.89 totals $82,659.94. [¶] 4. Hawthorne committed conversion when she failed to deposit $13,000.00 of the sale proceeds received from her first attorney into either her attorney's trust account or [Gilman's] attorney's trust account. [¶] 5. Gilman shall receive $437,000.00 of the net proceeds after sale in repayment of his contribution of $325,000.00 on his own behalf, $100,000.00 on Hawthorne's behalf, and $12,000.00 closing costs. [¶] 6. The remainder of the net proceeds after sale of $201,141.78 ($638,141.67 - $437,000.00) shall be evenly divided between Gilman and Hawthorne as follows: $100,570.89 to each party. [¶] 7. Gilman shall receive interest pursuant to Civil Code §3336[3] at the rate of 7% for the period of time from the first refinance through trial on the first withdrawal of equity according to proof, and interest at the same rate for the period of time from the second refinance through trial according to proof. [¶] 8. Hawthorne shall pay Gilman, the prevailing party, $15,244.80 in fees and costs." (Some capitalization omitted.)

In summary, the judgment awarded Gilman $549,570.89, plus interest to be determined based on the loan proceeds Hawthorne retained from the two refinances, plus attorney fees.

---

[3] Civil Code section 3336 states, in relevant part: "The detriment caused by wrongful conversion of personal property is presumed to be: [¶] First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted."

DISCUSSION

On appeal, Hawthorne seeks reversal of the judgment on the fraud and conversion causes of action. Specifically, she challenges paragraphs 1–4 and 7 of the judgment. She does not challenge paragraph 5, 6, or 8 of the judgment.

## I.  *Fraud—Paragraphs 1 and 2 of the Judgment*

Hawthorne argues that the trial court erred in finding Gilman's fraud claim, filed over six years after he contributed the additional $100,000 to close escrow, was timely. Code of Civil Procedure section 338, subdivision (d) provides that the statute of limitations for fraud or mistake is three years and that "[t]he cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Hawthorne claims there is no substantial evidence to support the trial court's finding of delayed discovery. She also argues there is no substantial evidence that Gilman suffered any damages based on fraud. Since we agree with Hawthorne's second argument, we do not need to reach the question of whether substantial evidence supported the trial court's finding of delayed discovery.

"To recover for fraud, a plaintiff must prove loss proximately caused by the defendant's conduct. [Citations.] 'Deception without resulting loss is not actionable fraud.' " (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 65.) Gilman alleged that Hawthorne defrauded him by agreeing to contribute 50 percent of the purchase price of the property and then, when escrow was about to close, informing him that she could not qualify for a loan without a cosigner and that she could not pay any cash toward the purchase price. Gilman then withdrew the additional $100,000 from his savings account and cosigned for the $225,000 loan to complete the

purchase of the property. The trial court found that Gilman's fraud damages were his inability to use the $100,000 in retirement funds he paid for the house on behalf of Hawthorne. However, it is undisputed that the house sold for a profit in 2021. Gilman acknowledged this and, when asked at trial what damages he sustained, he stated, "As of today, I can't think of any damages." During closing argument, Gilman's counsel acknowledged the lack of damages for the fraud cause of action. He stated, "I think there is a cause of action for fraud. I don't know what the damages are or what the penalties would be against her, but I believe that she was leading him along into doing this so she could have a nice place to live, and she stayed there for six years."

Gilman argues that the trial court's statement of decision awards $100,000 to Gilman as both damages for fraud and reimbursement to him based on the accounting after the partition by sale. We disagree. The judgment expressly states that Gilman's fraud damages were based on his *loss of use* of the $100,000 (which we discuss *post*). However, the $100,000 was awarded to him as part of the accounting distribution after the trial court credited Gilman's testimony regarding the terms of his agreement to contribute $100,000 cash on behalf of Hawthorne. Gilman did not argue or present evidence that he was damaged based on Hawthorne's representation that she would contribute $100,000 in cash to the purchase price. The property resold for a profit in 2021, resulting in net proceeds of $651,691. The parties stipulated that Gilman paid the $100,000 on Hawthorne's behalf to close escrow. Hawthorne did not dispute that Gilman was entitled to repayment of the $100,000, only whether the parties agreed Hawthorne would repay a portion of the $100,000 by working on the property and if so whether she did so. The trial court found against Hawthorne on these issues, and Hawthorne does not contest these findings or the accounting after

8

partition of sale, which awards Gilman "437,000.00 of the net proceeds after sale in repayment of his contribution of $325,000.00 on his own behalf, $100,000.00 on Hawthorne's behalf, and $12,000.00 in closing costs," in addition to 50 percent of the remaining net proceeds after sale, for a total of $549,570.89.

Gilman further argues that the trial court awarded Gilman damages based on the lost value of the use of the $100,000. He refers to the portion of the judgment that states: "This use on behalf of Hawthorne of the additional $100,000.00 deprived Gilman of his own use of the funds for a period of several years, causing harm to him." (Some capitalization omitted.) Notably, the judgment does not award Gilman any amount attributable to his loss of use of the $100,000 he paid on behalf of Hawthorne. Nor does the record reveal any evidence of such damages. Gilman claims, without supporting authority, that his testimony that he "can't think of any damages" was merely a legal conclusion and not evidence. We reject Gilman's argument. There is no substantial evidence to support a finding that Gilman was harmed by the loss of use of the $100,000, which he effectively invested by jointly purchasing the property, which appreciated in value by 2021. Specifically, there is no evidence as to what interest Gilman would have earned if the $100,000 had remained in his retirement account; whether he would have used it for other investments; or whether any forgone investments would have yielded a greater profit than Gilman realized from the appreciation of the property. He was awarded in the partition accounting the entire amount he contributed to the purchase price, plus a 50-percent share of the property's appreciation. Nothing in the record supports damages based on Hawthorne's misrepresentation that she would contribute $100,000 in cash toward the purchase on the property. "Misrepresentation, even

9

maliciously committed, does not support a [fraud] cause of action unless the plaintiff suffered consequential damages." (*Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 159, rejected on another ground in *Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 94–95.)

## II. *Conversion—Paragraphs 3 and 7 of the Judgment*

Hawthorne argues the trial court erred in finding that she committed conversion when she refinanced the original loan twice and removed cash equity belonging equally to the parties. The trial court found that Hawthorne converted $63,855.96 from the first refinance in August 2016 and converted $18,803.89 from the second refinance in June 2018. It awarded Gilman interest on these amounts under Civil Code section 3336 at 7 percent for the period of time from each refinance to trial. Hawthorne contends Gilman's conversion claim based on the 2016 refinance is barred by the three-year statute of limitations. She also contends that Gilman failed to state a claim for conversion and that substantial evidence does not support conversion.

We agree that conversion based on the 2016 refinance is time-barred. The elements of conversion are (1) plaintiff's ownership or right to possession of the property; (2) defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and (3) damages. (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 (*PCO, Inc.*).) The statute of limitations for conversion is three years (Code Civ. Proc., § 338, subd. (c)(1)), and the limitations period begins to run upon the act of wrongfully taking property. (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1433 (*Bono*).) Hawthorne allegedly converted the $63,855.96 from the 2016 refinance when she received the funds in August 2016 and did not give them to Gilman. Even assuming that such

10

conduct constitutes conversion, the three-year limitations period began to run in August 2016, by which time Gilman knew Hawthorne had obtained the loan proceeds and not given them to him.  Thus, his complaint filed in April 2021 is untimely.

The trial court applied the delayed discovery rule and found that Gilman " 'discovered' " Hawthorne's "deception after the second refinance in June 2018 when she did not repay the $100,000.00 she borrowed from him then."  Courts have recognized an exception to the three-year statute of limitations for conversion when " 'a fiduciary has concealed material facts giving rise to the cause of action.' " (*Bono, supra*, 103 Cal.App.4th at p. 1433.) The trial court's statement of decision cites to *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797 (*Fox*) for the position that to rely on the delayed discovery rule, the plaintiff " 'must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.' " (*Id.* at p. 808, italics omitted.)  However, the court then fails to apply these standards to Gilman and simply finds that he " 'discovered' " the "deception" in 2018 after the second refinance.  Substantial evidence does not support this finding.

There is no evidence that Hawthorne ever concealed the fact that she obtained funds from the August 2016 refinance and did not repay Gilman. Gilman testified that he refused to agree to the proposed third refinance in 2021 because "from the second and the third loan where money was taken out, I was then aware that I wasn't going to get any back of my money." (*Sic.*)  However, there is no evidence that Gilman was unaware in 2016 that Hawthorne did not pay him from the refinance proceeds.  Instead, the record establishes that Gilman agreed to the 2016 refinance and was aware in August 2016 that Hawthorne received funds from the first refinance that

11

went "[i]nto one of Heidi Hawthorne's accounts" and that she did not pay him any of the proceeds. Nor did he ever ask her to do so. It was Gilman's burden to prove that he first discovered the conversion claim based on the 2016 refinance within three years of the filing of the April 2021 complaint. (*Fox, supra*, 35 Cal.4th at p. 808.) He failed to do so. Gilman's conversion claim based on the August 2016 refinance is time-barred.[4]

The June 2018 refinance, which yielded Hawthorne $18,803.89, occurred less than three years before Gilman filed his complaint in April 2021. Although Gilman's conversion claim based on the June 2018 refinance is within the three-year limitations period, we find that substantial evidence does not support a finding of conversion.

" 'Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. [Citation.]' [Citations.] A 'generalized claim for money [is] not actionable as conversion.' [Citations.]" (*PCO, Inc., supra*, 150 Cal.App.4th at p. 395.)

---

[4] The statement of decision also found that Hawthorne breached a fiduciary duty to Gilman, including by failing to repay him the $100,000. In certain circumstances, the existence of a fiduciary duty reduces a plaintiff's burden of discovery of the accrual of a cause of action. (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157 [" ' "when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary" ' "].) However, "even assuming . . . that [Hawthorne] had a fiduciary duty to [Gilman], this does not mean that [Gilman] had no duty of inquiry if [he was] put on notice of a breach of such duty." (*Ibid.*) There is no evidence that Hawthorne concealed the fact that she obtained the loan proceeds and did not give them to Gilman in August 2016. Thus, even if her actions in failing to repay Gilman are considered a breach of fiduciary duty, they do not support delayed discovery of Gilman's claim for conversion based on the August 2016 refinance. (*Ibid.*)

12

Conversion is derived from the common law action of trover, and the gravamen of the tort is "the defendant's hostile act of dominion or control over a specific chattel to which the plaintiff has the right of immediate possession." (*Ibid.*) As explained in *PCO, Inc.*, "California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others. (See, e.g., *Haigler v. Donnelly* [1941] 18 Cal.2d [674,] 681 [real estate broker]; *Fischer v. Machado* [1996] 50 Cal.App.4th [1069,] 1072– 1074 [sales agent for consigned farm products]; *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 599 [citation] [attorney's claim for $6,750 fee from proceeds of settlement subject to lien]; *Watson v. Stockton Morris Plan Co.* (1939) 34 Cal.App.2d 393, 403 [citation] [savings and loan issued duplicate passbook and delivered funds to third party].)" (*PCO, Inc.*, at p. 396.) " '[A] cause of action for conversion of money can be stated only where a defendant interferes with the plaintiff's *possessory interest* in a specific, identifiable sum'; 'the simple failure to pay money owed does not constitute conversion.' [Citation.] Were it otherwise, the tort of conversion would swallow the significant category of contract claims that are based on the failure to satisfy ' "mere contractual right[s] of payment." ' " (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1151–1152, 1st bracketed insertion added (*Voris*).)

The evidence here does not support a finding of conversion based upon Hawthorne's refinance of the property with Gilman's knowledge and consent and her retention of the refinanced loan proceeds. It is undisputed that Gilman never asked Hawthorne to repay him with the proceeds of the refinanced loans, either before or after she received the funds. Gilman expressly agreed to the two refinances in advance and never conditioned his agreement on Hawthorne's using the proceeds of the refinanced loans to

repay him a portion of the $100,000 she owed him. His expectation that she would do so is not sufficient evidence to support a claim for conversion. We reverse the judgment in favor of Gilman on his conversion claims based on the refinances and also reverse the award of interest in paragraph 7 of the judgment.[5] (*Voris, supra*, 7 Cal.5th at pp. 1151–1152.)

## III. *Trial Court Erred by Sua Sponte Finding Hawthorne Converted $13,000—Paragraph 4*

The judgment found that Hawthorne committed conversion when she failed to deposit $13,000 of the sale proceeds received from her first attorney into either her attorney's trust account or Gilman's attorney's trust account. Gilman's conversion cause of action was based on the refinances only and did not include allegations regarding $13,000 missing from the sale proceeds. We agree with Hawthorne that the trial court erred in finding she converted $13,000, in the absence of any motion to amend the complaint to add the alleged facts surrounding the $13,000. (*McMillin v. Eare* (2021) 70 Cal.App.5th 893, 908–910 (*McMillin*).)

### A. Additional Facts

Gilman's pleading contains no allegations regarding conversion following the sale of the property in 2021. The issue arose somewhat obliquely during trial when Gilman's counsel examined Hawthorne. Much of the factual background regarding this issue was presented to the trial court

---

[5] Hawthorne, for the first time in the conclusion section of her reply brief, asks that in addition to ordering that the trial court strike the portion of the judgment ordering Hawthorne to pay interest on the proceeds of the refinances (paragraph 7), we should also order the trial court to enter a judgment "ordering the interest repaid." She does not include any record citations to support the implication that Hawthorne paid Gilman interest pursuant to the judgment. Without an adequate record, we are unable to consider the requested relief. However, the parties may address the issue on remand.

through statements from counsel for the parties, rather than directly from Hawthorne's trial testimony. Gilman's counsel sought to question Hawthorne about her receipt of a $13,000 check from her prior attorney. Gilman's counsel explained to the trial court that the net proceeds after sale of the property were approximately $651,000, which Hawthorne's prior counsel held in a trust account, and that the prior counsel later retained $13,000 from the trust account as payment for counsel's fees. The remaining approximately $638,000 in net proceeds was transferred to Gilman's counsel's trust account. Hawthorne's counsel objected based on attorney–client privilege. After further discussion by counsel, the trial court allowed Gilman's counsel to question Hawthorne about whether the $13,000 was part of the proceeds of the sale of the property, which should be added to the amounts in Gilman's counsel's trust account, but not about conversations or communications between Hawthorne and her prior counsel.

Gilman's counsel showed Hawthorne a copy of a check from her prior counsel that included a " 'description' " " 'Heidi Hawthorne refund fees.' " Although Hawthorne was not asked to identify the amount of the check and the exhibit is not included in the appellate record, the parties agree the amount was $13,000. Hawthorne acknowledged that she signed the check and that she did not return the funds to Gilman's counsel to be deposited in his client trust account with the remainder of the net sale proceeds. Hawthorne was not asked about, and did not testify as to, when she endorsed the check, but given that the property was sold in August 2021, it must have been after the complaint was filed in April 2021. At no point during the parties' discussion before the court did Gilman's counsel state that he was alleging Hawthorne converted the $13,000. Nor did he move to amend his complaint to include allegations regarding the $13,000.

15

During closing argument, Gilman's counsel argued that Gilman established conversion based upon the refinances, as alleged in his complaint. He mentioned the $13,000 in passing while discussing the division of proceeds of sale, stating, "The other one that's interesting is the $13,000 proceed of sale. And I almost forgot about that. That is in—Ms. Hawthorne already has that. That should never have been sent away outside of the net proceeds that should have been reported." Hawthorne's counsel did not mention the $13,000 in her closing argument. She argued that the refinances did not constitute conversion. Gilman's counsel did not refer to the $13,000 in his rebuttal closing.

Nor did Gilman's proposed statement of decision assert that Hawthorne's retention of the $13,000 constituted conversion. Instead, his proposed statement of decision found that Gilman proved conversion based on the refinances. He mentioned the $13,000 only in the proposed judgment as follows: "Ms. Hawthorne return the $13,000 that she received from her prior attorney which funds were from the net proceeds after sale of the property to the law office of [Gilman's counsel]."

Hawthorne's proposed statement of decision did not discuss the $13,000 in the context of conversion. It addressed the conversion claim based on the allegations regarding the refinances only. It mentioned the $13,000 in a footnote in the context of the accounting and final distribution and acknowledged that it should be deducted from the proposed distribution to Hawthorne.

The first time the $13,000 is asserted as the basis for Gilman's conversion claim is in the trial court's tentative proposed statement of decision filed on January 6, 2023. The tentative proposed statement of decision concludes that "Hawthorne committed conversion when she failed to

16

deposit $13,000.00 of the sales proceeds from her first attorney into either her attorney's trust account or Plaintiff's attorney's trust account. This amount shall be divided equally."

On January 26, 2023, Hawthorne filed objections to the trial court's tentative proposed statement of decision and requested a hearing. She did not object to the trial court's considering the $13,000 as part of the partition accounting, but she objected to it being the basis for a conversion judgment. She argued that the issue was not raised in Gilman's complaint and that Gilman never filed a supplemental complaint to allege facts material to the case occurring after the original complaint was filed. She claimed it was fundamentally unfair to find her liable for conversion of the $13,000 when it was not pleaded by Gilman and not brought to Hawthorne's attention. Hawthorne's objection states, in part, "Because it was outside the scope of the complaint, Hawthorne's current counsel did not know or understand that this $13,000 was from the Hawthorne–Gilman sales proceeds, and believed the refund was based upon an attorney–client dispute. At no time did [Gilman's counsel] contact Hawthorne's counsel to explain the issue and ask for the money. Had he done so, Hawthorne would have realized the situation and immediately tendered the money."

The trial court did not hold a hearing on Hawthorne's objections. On March 6, 2023, the trial court issued its statement of decision and judgment. The paragraph of the judgment finding that Hawthorne committed conversion based on the $13,000 is unchanged from the tentative proposed statement of decision except that the final decision deletes the statement, "This amount shall be divided equally."

17

## B. Analysis

We agree with Hawthorne that the trial court abused its discretion by sua sponte adjudicating an unpleaded supplemental claim for conversion based upon Hawthorne's retention of the $13,000 that her prior attorney returned to her. (*McMillin, supra*, 70 Cal.App.5th at p. 913 ["A court that rules on a material issue 'without even mentioning to the parties at the time that it was considering the question' violates due process"].) Although Gilman's counsel questioned Hawthorne regarding her receipt of the $13,000, he never sought to amend his complaint to allege Hawthorne's actions regarding the $13,000 constituted conversion; nor did he even suggest as much in either his closing argument or his proposed statement of decision.

Gilman argues that Hawthorne had opportunity for cross-examination and was not misled or prejudiced by his failure to amend his complaint to include allegations that her receipt of the $13,000 was a basis for his conversion claim. We disagree. Hawthorne had no notice of this new claim until the trial court's tentative proposed statement of decision concluded that Hawthorne converted the $13,000. During Hawthorne's examination on the issue, the trial court stated that the relevant question was whether the $13,000 should be part of the net sales proceeds.[6] Neither the court nor Gilman's counsel ever suggested the $13,000 was the basis for his conversion

---

[6] Despite the trial court's comment about determining whether the $13,000 was part of the sale proceeds, the judgment neither awards Gilman the $13,000 as damages nor includes it as part of the net sales proceeds. In the facts section of the statement of decision, the trial court states that the net proceeds from the 2021 property sale are $651,691, but paragraph 6 of the judgment states the lesser amount of $638,141.67 as the net proceeds. Neither party addresses this discrepancy, and Hawthorne explains in her reply brief that the $13,000 was addressed by the parties in the distribution of the proceeds, with each party receiving $6,500.

18

cause of action. We find that the trial court erred in sua sponte amending Gilman's pleading to adjudicate an unpleaded claim in its tentative proposed statement of decision and that Hawthorne is prejudiced by a finding that she committed conversion based on facts that were never alleged or argued to constitute conversion. (*McMillin, supra*, 70 Cal.App.5th, at p. 913; *Castaic Clay Manufacturing Co. v. Dedes* (1987) 195 Cal.App.3d 444, 449 [in the absence of an actual amendment to conform to proof, the trial court may not grant relief not alleged in the pleadings].) We reverse the portion of the judgment finding that Hawthorne converted $13,000.[7]

## DISPOSITION

The judgment is reversed in part. The judgment against Hawthorne on the fraud cause of action and the conversion cause of action is reversed. The matter is remanded to the trial court with instructions to issue a new judgment striking paragraphs 1–4 and 7 of the judgment. Hawthorne is entitled to her costs on appeal.

---

[7] Hawthorne also argues that the trial court erred in finding that Gilman and Hawthorne created a partnership and were fiduciaries because Gilman's complaint did not include allegations of partnership or breach of fiduciary duty and that there is no substantial evidence to support the trial court's findings. The trial court made these findings in its statement of decision in connection with consideration of the conversion claim and the impact of the statute of limitations. The judgment itself, however, does not include any findings regarding partnership or breach of fiduciary duty. For the reasons discussed *ante*, we reverse the judgment for conversion and need not further consider the propriety of the trial court's consideration of the issue of partnership and breach of fiduciary duty or whether there was substantial evidence of a partnership or breach of fiduciary duty.

19

Jackson, P. J.

WE CONCUR:

Simons, J.
Chou, J.

A167783/*Gilman v. Hawthorne*